and off. So, Mr. Sussman, you have reserved two minutes for rebuttal, so that gives you eight minutes to start. Let's just give us one second to get settled. May it please the Court, I'm Michael Sussman from Goshen, New York. I have the pleasure of representing Judge Frank Mora on this appeal. Apart from not being neutral as applied, the challenged OCA regulation fails the general applicability prong and therefore violates the First Amendment by causing intrusion into individual religious beliefs, which is precisely the role government may not play. Judge Chin's majority decision for this Court in We the Connecticut highlights the core principle, quoting, A law is generally applicable when it treats similar conduct similarly without regard to whether the conduct is religiously motivated. The Supreme Court has explained that a law is not generally applicable in at least two circumstances. First, where it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions. But you're not, I mean, you're not suggesting that any inquiry into the sincerity of belief runs afoul of general applicability because there's some discretion, are you? Clearly that goes way beyond what happened here. That may be permissible, and the Court has long said sincerity is at issue. But sincerity is not what happened here. There was clear and continued inquiry into the nature of religious belief when it was plainly established on the record that the gentleman had doctrinal support for his particular interpretation of the Catholic religion. That couldn't have been clearer from the citations repeated by him and his continued pronouncements with regard to the longevity of that view in his own life. There was no real doubt as to his religious belief. And in fact, sincerity didn't even come up. I mean, it really never even was raised as a reason until litigation commenced. That was the reason for requesting certain information. And then there was, I guess there's a factual dispute as to whether he complied with the requests for information. But I'm trying to just figure out the general applicability problem of this analysis. Yeah, excuse me, John. So, I mean, it seems to me that some Catholics are getting this, this exception, right? They're being exempted, or got exempted, and your client did not. And so what is it that you are saying is- People who said the exact same thing as he in his application got exemption, and he did not. We cite that in the second amended complaint. A husband and wife from Orange County, both of whom were judges in the state, who had the same religious beliefs and so projected in their applications, one got and one did not. So what we have- The plan is that it's arbitrary then, right? Well, it's a level of under- I mean, it gets to the next stage. But I think the Hochul case, if I just could continue for a minute, clarifies the distinction. Because in Hochul, the court explained that where a law provides for an objectively defined category of people to whom the vaccination requirement does not apply, including a category defined by medical providers, use of their professional judgment, such an exemption affords no meaningful discretion to the state. That's at 17F Ford 289. Ours is the opposite. Unlike the edict considered in Hochul, which provided for no religious exemption from covered medical professionals, here, as detailed in the second amended complaint, the challenge regulation empowered the VEC, which is the Vaccination Exemption Committee, a panel of individuals who have no known training or qualification- Your claim is really a different kind of a claim, right? It's not a challenge to the policy. You seem to be arguing that your client didn't get it and they were wrong in not giving to him. Well, there's a constitutional free exercise infringement here. That's the fundamental claim. And I think it has to be a judge- Or is it as applied to your client? It's both. It's both. And the reason it's both- Officially invalid as well as as applied to Mr. Mora. Yes, Your Honor. And the reason it's both is because the VEC, which is a body from which no appeal could be taken, have no standards which would allow for anybody to know whether they were, in fact, infringing upon free exercise. And that is structural in the way this was done. As applied, it's plainly arbitrary, if you will, for the reasons I've explained and are set forth plainly in the second amended complaint. It is facially impermissible, but it's also as applied impermissible. Did you make the facial challenge below? Yes. The other side argues that it's not preserved. I mean, I don't get why it wouldn't be preserved. We argued it clearly that the VEC was an arbitrary mechanism of individuals who are unqualified and standardless. It's in the amended complaint. So I think we do argue it. We argue it within the context of a free exercise. Is that a facial argument that the committee was acted in an arbitrary manner? That sounds like an as-applied challenge. I think it's both, Your Honor, respectfully. I think it's both because of the standardless nature of discretion accorded to VEC. And that invites, in a very sensitive area, which this Court has repeatedly explained, to answer Judge Sullivan's question, is not an appropriate one for the kind of scrutiny, because that kind of scrutiny gets to the Establishment Clause issues. I understand the issue of sincerity, and there has to be some basic showing of sincerity. That's not disputed. But when there is a lifetime commitment not to vaccinate based on religious doctrine, that's demonstrated by the individual. It's stated under oath by a judge, and there's absolutely nothing to contravene that. There's the same scripture cited as they recited for others who get this exemption. There's obviously both problems. So I think that that's how I would handle that. So one question I had about the exemption application was, and I don't question the sincerity of Mr. Moore's statement, but he says the catechism of the Catholic Church defers to moral conscience. And he comes back to the notion of moral conscience. It's my moral conscience that's dictating my choice here to decline to be vaccinated. And that seems different from the other kinds of religious exemptions that we've seen in cases presented to us. Could you comment on that observation? I think it's a very fine line that Your Honor respectfully is trying to draw. I think that what Mr. Moore has said in his application is that in his religious belief, the ability to define and understand what these scriptural passages mean is a matter for him of conscience. That's how he understands it. He understands that as being his responsibility as a Catholic, which is to read the provisions which he cites from Corinthians and James and others, to understand God's will as best he can understand it and then act out of that, which he views as his conscience, his moral conscience and compass. I think it's a very fine line, though, to draw to say one would fall as religious and the other not. I don't think it's philosophical. I don't think it's scientific or medical. I think it's, sorry, go ahead. I'm just saying it's different from the other claims for religious exemption that I'm familiar with, and I wonder whether that isn't what prompted the committee to ask for more information. Judge, respectfully. Mr. Moore, of course, just referred them back to his initial statement. Respectfully. I think what we say in the complaint, or again, this is on a motion to dismiss. Of course. So I think we have to keep that in mind. What we've said and we've quoted in that motion, in the second amended complaint extensively, from applications that were exactly, almost exactly the same in terms of verbiage. They cite the same passages and they cite the same passages for their religious intent and purpose. And those weren't attached to the complaint or referred to? They weren't attached to the complaint? They're not attached, but they're cited. They're cited extensively and quoted from. They're not attached, per se, to the complaint as exhibits to the complaint, if that's what you're asking, Your Honor. But they are cited in the complaint extensively, the language quoted from. So it seems to me that if one's going to make the parsing that Your Honor would be making, it would be inconsistent with what this VEC committee system did itself, this unappealable committee. There are a number of other arguments, but I know my time has expired and I have to respect the court's. Well, I guess I was hoping that you would talk a little bit about the Office of Court Administration and the unified court system and whether the 11th Amendment bars your claims against them, at least on the First Amendment challenges. I mean, there's a series of arguments there that we haven't even touched on. I realize. If you allow me to answer, I will. Thank you, Judge. So the 11th Amendment argument, as the court knows, comes down to whether one is seeking prospective injunctive relief against OCA or not. Prospective injunctive relief, as I cite from the Yonkers case, is clear law, is permissible against state agencies, whereas money damages are not permissible. We are seeking that relief here. We are seeking a declaration that Mr. Mora was entitled to that religious exemption. And that is not a moot point, given that Congress. So you're saying a declaration and an injunction are the same thing? Yes, they are. A declaratory relief and an injunctive relief are the same? In this context, I would say they're the same. An injunction barring the state from classifying him as someone who does not deserve a religious exemption. And the reason that's not moot here, as we say in the complaint when it was written, is that Judge Mora is still under persecution from the New York State Disciplinary Committee on a referral from Judge Marks, the administrative judge, as was indicated, for not being vaccinated. I'm sorry, you say under persecution? Yes. And what exactly do you mean by that? I'll explain it exactly. After the judge, Judge Mora, decided that he could not. I'm aware there's a referral. There's a referral, and that referral is continued. He is still being asked for his family medical records, his children's medical histories. He's being asked extremely intrusive questions by a panel, a disciplinary panel, who purports to have the authority to take away his judgeship. And that's all predicated upon his not getting this religious exemption and then refusing to vaccinate. But the panel is not a party to this case, right? No, I agree it's a party, but it would be very influential. Excuse me. But you're seeking, it seems to me you're seeking an injunction against a third party. We're seeking, that's why I used the word declaration. The court said it's the same. A declaration meaning the district court could say, having heard this case, that the denial of the religious exemption was unconstitutional and wrongful. If it did that, that would move, in my view, this disciplinary proceeding and would be certainly highly influential in it, because the whole proceeding is predicated on the wrongfulness of his, Mora's, behavior in refusing to be vaccinated. So the two are interlinked, an extra interlinked. Thank you. So we're going to hear from the appellees in, I guess, order, the individual defendants first? That's correct, Your Honor. Mr. Murab, you're going to be proceeding with respect to that? That's correct, Your Honor. And may it please the court, Karthik Naram with the New York Attorney General's Office. I'm arguing on behalf of the individual defendants. My colleague will be arguing on behalf of UCS and OCA. Okay, five minutes each. Thank you, Your Honor. Yes. Okay. And may it please the court. Plaintiff alleges a variety of First Amendment claims against the individual defendants, and they all boil down to the allegation that he was discriminated against on the basis of his religious beliefs. But it's undisputed that the UCS vaccination policy provided for religious exemptions and granted religious exemptions in hundreds of cases, including to individuals who, by plaintiff's own account, share his religious beliefs. So let's say someone applied for an exemption and was denied the exemption and was just absolutely wrong. Would there be any recourse? Yes, Your Honor, there would be. What would that be? What plaintiff could have done and what others have done who have been denied exemptions under this very policy is go to state court and institute an article.  Correct, Your Honor. And so plaintiff is not without recourse here. Just because he disagrees with the committee's decision doesn't mean it's a constitutional violation. Well, I guess the question is, I mean, so if there is a religious exemption, but with respect to Catholics, that exemption is decided by flipping a coin. Some get it and some don't. Your view is there wouldn't be a First Amendment claim there? Well, perhaps in that case, Your Honor. In this case, the allegation is that other Catholics and others who had similar religious beliefs were granted religious exemptions. And so there's nothing being alleged here that this decision- Well, there's an arbitrariness that's being alleged. And so why isn't that enough to assert a First Amendment challenge? Because plaintiff's claim here is that he was discriminated against because of his religious beliefs. But he's also alleging that others with his religious beliefs were granted exemptions. And the only reasonable inference from those allegations is that plaintiff's application was unsuccessful because of problems with plaintiff's application, not because he was Catholic, not because he had certain religious beliefs. But that's a hard thing to resolve on a motion to dismiss, right? Not in this case. Well, he's saying that, I think, that this is an arbitrary process, that people who assert the same religious exemptions citing the same authorities are getting different results. And that that arbitrariness is therefore, you know, imposes a restriction on his religious practice. And your view is that, no, that's not the case? If it's arbitrary, you just have to go to Article 78? It would depend on the allegations. In this particular case, though, his own allegations undermine not only the free exercise claim, but the equal protection claim because there's no plausible allegation that his application was denied for an impermissible basis. And I can get into both the facial challenge and the as-applied challenge that plaintiff alleges here under the free exercise clause. As for the facial challenge, just as a threshold matter, plaintiff waived that argument because, as the district court noted, the only plausible way to read the complaint is as alleging an as-applied challenge. But in any event, this was a neutral policy of general applicability that was subject to and really undisputedly satisfies a rational basis review. And I can go right into general applicability because plaintiff has argued on that basis this morning. This policy was generally applicable because it was neither substantially under-inclusive, it did not favor secular conduct over religious conduct, and the presence of the religious exemption itself does not trigger strict scrutiny. It does not mean the policy is not generally applicable. Yes, in some cases exemptions can trigger strict scrutiny. For example, in the Fulton case in the Supreme Court. But in those cases, the grant of discretion to the decision-maker is so broad that he or she can decide not to extend the exemption to cases of religious hardship. That's clearly not the case here because the exemption was built into the vaccination policy. And so because it was neutral, because it was generally applicable, rational basis review applies and there's really no dispute that the policy satisfies that test. I would also note that the policy was as applied to plaintiff. There's no plausible challenge there because, in this case, the committee was asking not only a permissible inquiry but a necessary inquiry, which is whether each applicant had a sincerely held religious objection to vaccination. And there's no dispute that that was the proper inquiry. Do we know what the basis of the denial was? Was it that they felt this wasn't sincere? No, Your Honor. There's no explanation, is there? There was no explanation in the immediate notification of the decision. That's right, Your Honor. But the rationale is that plaintiff failed to provide sufficient information for the vaccination exemption committee to discern a sincerely held religious belief. And I think the supplemental questionnaire specifically— And where is that clear? I'm sorry, Your Honor? Where does the record make clear that that was the basis for the decision, that he failed to provide sufficient information? That's alleged in the complaint, Your Honor. Plaintiff alleges in the Second Amendment complaint that, in communicating with counsel for the VEC, he was informed that, among other things, the plaintiff failed to provide sufficient information. And that's also clear from the record. And you're saying, even assuming that's true, that just does not state an as-applied religion claim? That's correct, Your Honor. That's not a First Amendment violation because it was up to each applicant in this process to make a demonstration to the committee of a sincerely held religious objection. Plaintiff's application was unsuccessful because of problems with his application. The supplemental questionnaire really encapsulates this problem because Question 3 asks plaintiff to specify what his religious beliefs are and why they compel him to abstain from vaccination. And he simply referred back to his initial application, his initial submission. And that's problematic because the initial submission raised reasonable questions about whether his objection to vaccination was based on religious belief or more secular concerns. And, Judge Carney, you mentioned that the initial submission did talk about conscience. It at least created some ambiguity about what the basis was. The exemption was not denied on that basis, but the committee came back and said, we need more information, and plaintiff, in response to that, declined to do so. Well, he alleges that other people who said exactly what he said got exemptions. So what are we to make of that? Two points on that, Your Honor. First, plaintiff, in part, is relying on what he says are verbatim excerpts from Ms. Scheib's application, but that is not in the complaint anywhere, and it appears for the first time in the reply brief. And it doesn't cite anything, so I don't know where that's coming from or if that's an accurate representation of Ms. Scheib's application. But putting that issue aside, the only reasonable inference that can be drawn from the fact, as alleged here, that others had similar, very similar applications and were granted is that there was something in their articulation of their religious beliefs that passed muster or that satisfied the standard, and there was something about plaintiff's application that did it. There's no allegation that, there's no plausible allegation that just because he was Catholic, just because he believed a certain set of beliefs, that that was the reason for his denial, and therefore there's no plausible claim here. Well, but, I mean, isn't the arbitrariness enough to get you there? I guess, isn't that the point? I mean, if you have exemptions, but they are arbitrarily applied for religious exemptions, then isn't that enough to get you past the general applicability and neutrality problems? But the way plaintiff is framing his complaint is that he wasn't just randomly denied an exemption. He was denied an exemption on the basis of his religious beliefs. That is the basis of his entire First Amendment claim and all the iterations found in the complaint. Well, maybe it's just one step, one extra step, which is he was denied an exemption based on his religious beliefs, which are afforded an arbitrary exemption process. Sometimes you get it, sometimes you don't. It's the equivalent of flipping a coin. I can understand if that was the allegation, Your Honor, but the allegation as alleged in this complaint is that there was a standard applied, which is whether each application demonstrated a sincerely held religious belief. Whenever there's a standard applied, some applications will fall short of that standard, some applications will meet that standard. That does not by itself suggest that the exemption process was applied in an arbitrary manner. And if plaintiff did want to challenge the decision itself, the correctness of that decision, as I said, he has recourse to do that. And throughout the moving brief and the reply brief, you see the words arbitrary and capricious throughout that, and counsel mentioned today, that is quintessentially the language of administrative agency review, which plaintiff could have gone that route. But not every disagreement with the committee is a constitutional violation, and certainly not in this case. If I have a chance to just address the mootness point, because it came up at the very end, it's important to note that this policy is no longer in effect, and as such, there's no longer any prospective effective remedy. But what about the referral? The referral is still open, and as a sitting judge, doesn't he have a continuing interest in stopping the referral, stopping action on the referral? Your Honor, the referral has already been made. It's now in the hands of the commission. The commission is not a party to this case, and plaintiff is seeking no injunctive relief as against the commission. In fact, he explicitly disclaimed seeking any injunctive relief as against the commission, page 31 of his moving brief. And so any issue he has with what the commission is doing, that is solely their jurisdiction. But I think what he's arguing is if this court were to declare that the referral was made on an improper basis, an improper predicate, that that would affect the committee's action. Well, to be clear, we're only seeking dismissal on mootness grounds of the injunctive relief in the complaint. The rest of the case would go forward, and plaintiff still has his opportunity here to argue the First Amendment claims that he's alleging here. But the injunctive relief he's specifically seeking in the complaint is a retroactive exemption under this policy which no longer exists. And so because of the specific relief he's seeking, there's no longer any effectual remedy that this court can provide. As this court noted just last year in the Marciano case, the theoretical possibility of a challenged policy recurring is not a reasonable expectation that the policy will recur. And therefore, we ask that that portion of the request be dismissed on mootness grounds. And for all those reasons, we ask that the district court's decision be affirmed. Thank you, Your Honors. Okay. Thank you, Mr. Dorado. And I'm here for Mr. Sudzinski. Am I saying that right? Sudzinski, Your Honor. Sudzinski. Sorry. Good morning. If it may please the court, my name is Mike Sudzinski. I represent the Defendancy Unified Court System and the Office of Court Administration. If the court's not already aware, OCA, the Office of Court Administration, is essentially one and the same with the Unified Court System, so you may hear me refer to them simply as the court system. I'm going to spend my time addressing Plaintiff's Title VII claim, which is the only one that seems to be in dispute on appeal. His First Amendment claim brought pursuant to 1983 was denied and was not raised again on appeal. We're asking that the court affirm the district court's dismissal because the very issue under Title VII, whether or not Judge Mora is an employee under the Title VII's definition, has already been decided by the Supreme Court. And what about the discriminated against any individual prohibition? Isn't he an individual even if he's not an employee? He's a policy making level individual? I've read that in his brief. I believe that is a red herring. I believe that language is included in Title VII to encompass individuals who are prospective employees, meaning if you go in to be hired or you sit for an interview, you can't be denied a job on the basis of your race, your gender, or religion. If you were to read it as Plaintiff argues, it would eviscerate the exclusions in the definition of employee and anyone could be brought in essentially because that's what he's saying. If you read it as individual, then anyone, whether they're an employee or not, whether they are part of the exclusions under the definition, now all of a sudden is covered by Title VII. And that clearly was not the intent of Congress when they enacted Title VII. So you're saying it's a policy making level employee? I think it's important to refer back to the employee definition within Title VII because Congress clearly intended to exclude individuals, whether they're elected or appointees at the policy making level. Again, although that portion of Title VII refers to individuals, I believe it's clear that Congress's intent was to include people who were not yet employees but were seeking employment. To go on, in Gregory v. Ashcroft, cited by the Supreme Court, 501 U.S. 452, it looked at the language under the Age, Discrimination, and Employment Act of what an employee is under that statute. And that language is identical to Title VII. And although Title VII was an at issue in Gregory, the court addressed this issue of whether or not state court judges are considered appointees at the policy making level and specifically found that they were. They note that under Title VII, even though you may not be making policy, it was clear that Congress's intent was to include certain state officials who had that sort of higher level authority. And I'll read just a quick quote from Gregory. The Supreme Court found that state judges are in, quote, in a position requiring exercise of discretion concerning issues of public importance, end quote, even if they don't make policy the same way an executive or a legislator might make policy. So this issue of whether or not a state court judge, such as Judge Mora, is covered by the term appointee at a policy making level has already been decided by the Supreme Court. I don't think your adversary makes an argument that the source of congressional authority to legislate for the ADA was different from Title VII, and that would explain a different approach to who's covered. Yes. Is that your answer? That's actually already been, that was covered also by the Supreme Court in their decision, and that's at page 470, and I'll read the quote from that as well. They talk about, in light of the ADEA's clear exclusion of most important public officials, it is at least ambiguous whether Congress intended that appointed judges nonetheless be included. In the face of such ambiguity, we will not attribute to Congress an intent to intrude on state governmental functions, regardless of whether Congress acted pursuant to its Commerce Clause, such as in the ADEA, or Section 5 of the 14th Amendment, such as in Title VII. So both of those issues were addressed by the Supreme Court in Gregory. Plaintiff also makes an argument about, well, he should be considered an employee under the indicia of employment. That is not an exclusion, or that is not covered by Title VII. So whether you believe that he meets those criteria of the indicia of employment, there's no language in Title VII to say, well, we've got these carve-outs, but if one of these carve-outs meets the indicia, well, then that person is an employee. So it's also, again, a bit of a red herring. In any event, the court system, including the individual defendants, do not hire or fire judges. They do not set the terms. They do not decide what cases. Nobody supervises our trial court judges. And I would argue that actually the one person who can set the terms of his employment is actually Judge Mora. He is one of two city court judges in Poughkeepsie, and he is the senior judge. And in most of our trial courts around the state, senior judge has most of the authority in the courthouse. The chief clerk typically refers to the senior judge, and the senior judge gets to pick who has what chambers, what cases. Case assignments are done randomly, but, of course, that has to do with availability. So there is no aspect of Judge Mora's employment as a judge, excuse me, not employment, as a judge that is covered or dictated by anyone within the court system. Is my understanding correct that Judge Mora was able to continue working throughout the period of the pandemic? That's absolutely right. And, in fact, immediately after he was placed on leave, not leave, I'm sorry, excuse me, immediately after he was told he could not enter the courthouse because he had not been vaccinated, Judge Minahan reached out to him by e-mail and said, anything I can do to help you work remotely and to cover your cases, please let me know. I understand that our IT people are helping you obtain another monitor. So there was no question about that he would be allowed to continue his duties. The only thing that he could not do, of course, were in-person appearances. And certain things such as criminal arraignments, I believe, are meant to be in-person. So if the Office of Court Administration or the U.C., the court system, UCS, decided that Jewish judges couldn't come to chambers, they could only work remotely, they're not allowed to come to the courthouse, what relief would those judges have against the court system, against the OCA? I'm not sure how the court system or anyone within the court system. They're not going to let him in the building. I would think he would have a lot of recourses, a lawsuit with an immediate injunction to stop, because that would clearly be violent. Well, a lawsuit on what grounds? I mean, so not First Amendment. You said the 11th Amendment doesn't allow you to be sued, right? And not Title VII because the judges are not employees. So what? Your hypothetical presumably would come from our chief judge or our chief administrative judge. Maybe it's just coming from the folks who have the keys. But in any event, what is a judge supposed to do? Well, the folks who have the keys are the chief judge and the chief administrative judge, and the chief administrative judge currently is Judge Zayas. So in that case, that person could bring a lawsuit immediately against Judge Zayas saying, I'm being barred from a courthouse based on my religion without any discernible reason, because, again, your hypothetical, the only basis is that the person is Jewish, not that they have any other sort of characteristic. So I would think that that person could go into court, whether federal court or even state court, and say this is a violation of my rights, whether it's under the First Amendment. But only against the individual, not against the court system. No, I don't believe so. I believe 1983 bars constitutional violations, whether for damages or injunctive relief. And I don't think that's in dispute here. I just want to quickly address mootness. As my colleague said, this policy was rescinded in February of 2023. There's no indication that a new pandemic or a future pandemic is on the horizon. And even if such were the case, the circumstances of any future pandemic could be vastly different. There may not be vaccines. There's no reasonable basis to believe that this type of policy is going to occur within any of our lifetimes again. And so it is absolutely moot, this request for injunctive relief. Thank you, Mr. Suginski. Thank you, Your Honor. We'll now hear from Mr. Sussman for two minutes of rebuttal. Thank you, Your Honor. Shen, JA55 has the letter which was sent to my client on 12-23-21, which has no reason. No reason was provided to my client, just so that is buttoned up. With regard to other questions that have been asked, my client was disallowed, Your Honor, from doing many of his functions. And you asked was he still able to work. He was able to work out of his basement without any staff. He was also not allowed to do criminal cases, of course, which were a major part of his docket. He was not allowed to do family or surrogate matters, which, as the complaint indicates, were previously assigned to him. His work was significantly truncated by dint of this quarter. With regard to the arguments about the Supreme Court precedent, I believe that dicta was read to you, but I think the issue is squarely before you as to the nature of the authority which predicated the ADEA and the authority which predicates under Section 5 of the 14th Amendment, Title VII. The authority is simply different. In reading Gregory, you think that had it been a race or religion-based Title VII claim, we would have had a different outcome. I do believe that. What's the basis for saying that? The basis for saying that is because the discretion given to the states in Gregory to regulate the age of retirement for judges was long established as a basis of state comity and authority. The ability, as your hypothetical raises, Judge Sullivan, of a state to discriminate on the basis of race, religion, or any other protected classification of that magnitude is never plainly established as something states could do. So, yes, I think there would be a different outcome, and I think there's a good reason for the outcome, based on the history of comity given to states to regulate the age of judges, which is exactly what was being challenged under the ADEA in Gregory. So, yes, I think there's a principled reason why a different outcome would obtain and should obtain, and it's an important reason, and it goes to the heart of the case. Counsel says there's no infringement, both counsel, on religious liberty, and religious liberty is a concept that this Court has recognized is for each individual. It's not a group question. My client had sincerely held religious beliefs, which were, as it turns out, paragraph 66 and 67 of the amended complaint make clear, in paramateria with other individuals. These other individuals were given the exclusion, my client, or the exemption. My client was not. No reason, as Justice Chin pointed out, was provided to my client, and the process was inherently arbitrary and discriminatory. This VEC had to adduce no reason for what it did, and that infringed on his fundamental religious beliefs and practice. Thank you for your time. Do you agree that to the extent that arbitrary and capriciousness is the basis for the claim against the exemption-granting authority, VEC, that an Article 78 proceeding was available to your client? Your Honor, my response is discrimination in the law is always arbitrary and capricious. We have federal civil rights law and a constitution to allow federal courts to enforce federal rights. A federal right- Do you agree-  My question is, do you agree that an Article 78 proceeding was available?  You do not? I don't believe that it's available because Article 78 in New York cannot deal with constitutional issues. That's a fundamental precept of Article 78. Here you have a fundamental constitutional trespass. You cannot bring that in an Article 78 proceeding in New York. It's not a predicate for an Article 78 proceeding, and that's what's at stake here. There's a fundamental constitutional right at stake- Thank you very much, Mr. Sessman. Thank you very much, Mr. Sessman. Thank you very much. We will reserve decision.